# RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE

Dealer Number _____

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| PALM BEACH<br>JEFFREY MARC SISKIND<br>3465 SANTA BARBARA DR<br>WELLINGTON FL 33414 | N/A | OFF-LEASE ONLY<br>1200 S CONGRESS AVENUE<br>WEST PALM BEACH, FL 33406 |
| Buyer's Birth Month: | Co-Buyer's Birth Month: N/A | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of **8.9400** % per year. The Truth-in-Lending Disclosures below are part of this contract. You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2014 | MERCEDES C300W 4 | | WDDGF8AB2ER312146 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural    XX PERSONAL |

You agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental or a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 8.94 % | $ 6505.36 | $ 21651.68 | $ 28157.04 | $ 28157.04 |

**Your Payment Schedule Will Be:**  (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 391.07 | Monthly beginning 02/17/17 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within **10** days after it is due, you will pay a late charge of **5** % of each installment.
**Prepayment.** If you pay off all your debt early, you may have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1 | Cash Price (including $ **1195.88** sales tax) | | $ 20293.88 (1) |
| 2 | Total Downpayment = | | |
| | Gross Trade-In Allowance | $ N/A | |
| | Less Pay Off Made By Seller | $ N/A | |
| | Equals Net Trade In | $ N/A | |
| | + Cash | $ N/A | |
| | + Other | $ N/A | |
| | (If total downpayment is negative, enter "0" and see 4J below) | | $ N/A (2) |
| 3 | Unpaid Balance of Cash Price (1 minus 2) | | $ 20293.88 (3) |
| 4 | Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
| | A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
| | Life | $ N/A | |
| | Disability | $ N/A | N/A |
| | B Vendor's Single Interest Insurance Paid to Insurance Company | | N/A |
| | C Other Optional Insurance Paid to Insurance Company or Companies | | N/A |
| | D Optional Gap Contract | | 895.00 |
| | E Official Fees Paid to Government Agencies  BATTERY,TIRE,MVWEA | | 75.95 |
| | F Government Documentary Stamp Taxes | | N/A |
| | G Government Taxes Not Included in Cash Price | | N/A |
| | H Government License and/or Registration Fees | | 386.85 |
| | I Government Certificate of Title Fees | | N/A |
| | J Other Charges (Seller must identify who is paid and describe purpose) | | |
| | to N/A for Prior Credit or Lease Balance $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | to N/A for N/A $ N/A | | N/A |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | | 1357.80 (4) |
| 5 | Loan Processing Fee Paid to Seller (Prepaid Finance Charge) | | N/A (5) |
| 6 | Amount Financed (3 plus 4) | | 21651.68 (6) |

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 6, is paid in full on or before
N/A , Yea N/A . SELLER'S INITIALS ____ N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term **72** Mos    Name of Gap Contract **CLASSIC**
I want to buy a gap contract.
Buyer Signs X _____

**VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ __N/A__ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.
You authorize us to purchase Vendor's or Lender's Single Interest Insurance.
Buyer Signs X _____    Co-Buyer Signs _____    Date: _____

### Insurance Section (right column)

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
Term ____ N/A
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Term ____ N/A
Premium: 
Credit Life $ ____ N/A
Credit Disability $ ____ N/A
Insurance Company Name ____ N/A
Home Office Address ____ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.
X __N/A__
Buyer    Date
X __N/A__
Co-Buyer    Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgment if the proposed credit life insurance policy does not contain this restriction.)
X __N/A__
Buyer    Date
X __N/A__
Co-Buyer    Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.
X __N/A__
Buyer    Date
X __N/A__
Co-Buyer    Date

**Other Optional Insurance**
__N/A__    __N/A__
Type of Insurance    Term
Premium $ ____ N/A
Ins. Co. Name & Address ____ N/A

__N/A__    __N/A__
Type of Insurance    Term
Premium $ ____ N/A
Ins. Co. Name & Address ____ N/A

__N/A__    __N/A__
Type of Insurance    Term
Premium $ ____ N/A
Ins. Co. Name & Address ____ N/A

__N/A__    __N/A__
Type of Insurance    Term
Premium $ ____ N/A
Ins. Co. Name & Address ____ N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.
X _____
Buyer Signature    Date
X _____
Co-Buyer Signature    Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

**Returned Payment Charge:** If any check or other payment instrument you give us is dishonored or any electronic payment you make is returned unpaid, you will pay a charge of $25 if the payment amount is $50 or less; $30 if the payment amount is over $50 but not more than $300; $40 if the payment amount is over $300; or such amount as permitted by law.

Florida documentary stamp tax required by law in the amount of $ **75.95** has been paid or will be paid directly to the Department of Revenue.
Certificate of Registration No. _____

You assign all manufacturer rebates and cash back incentives used as a downpayment on this contract to seller. You agree to complete all documents required for assignment of rebates and incentives.

### Trade-In Section

| | Trade-In Vehicle | | Trade-In Vehicle |
|---|---|---|---|
| Year | N/A   Make N/A | Year | N/A   Make N/A |
| Model | N/A | Model | N/A |
| VIN | N/A | VIN | N/A |
| Gross Trade-In Allowance $ N/A | | Gross Trade-In Allowance $ N/A | |
| Payoff Made by Seller $ N/A | | Payoff Made by Seller $ N/A | |
| Lienholder N/A | | Lienholder N/A | (e) |

You assign to Seller all of your rights, title and interest in such trade-in vehicle(s). Except as expressly stated to Seller in writing, you represent that your trade-in vehicle(s) has not been involved in an accident, has not had any major body damage or required any major engine repair, and was not previously used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

Buyer Initials _____   Co-Buyer Initials _____

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the trade-in payoff amount shown above and in Item 2 of the Itemization of Amount Financed as the Pay Off Made by Seller.
1. Seller agrees to pay the payoff amount shown above and in Item 2 to the lienholder or lessor of the trade-in vehicle, or its designee.
2. If the actual payoff amount is more than the amount shown above and in Item 2 you must pay the Seller the excess on demand.
3. If the actual payoff amount is less than the amount shown above and in Item 2 Seller will refund to you any excess Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Pay Off Made by Seller shown above and if any, refund.
Buyer Signature X _____   Co-Buyer Signature X _____

**JURY TRIAL WAIVER.** By entering this contract, you agree to waive your right to trial by jury.
Buyer Signature X _____    Co-Buyer Signature X __N/A__

**SELLER'S RIGHT TO CANCEL** — If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back, which gives the Seller the right to cancel if Buyer is unable to assign this contract within **30** days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ **50.00** per day from the date of cancellation until the vehicle is returned or repossessed.
X _____   X _____
Buyer Signs    Co-Buyer Signs

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and we must sign it. No oral changes are binding.
Buyer Signs X _____    Co-Buyer Signs X _____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See back for other important agreements.**

**NOTICE TO THE BUYER: a)** Do not sign this contract before you read it or if it contains any blank spaces. **b)** You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 01/03/17    Co-Buyer Signs X _____ Date _____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X _____    Address N/A
Seller Signs OFF-LEASE ONLY    Date 01/03/17    By X _____    Title F&I MGR
Seller assigns its interest in this contract to **ALLY FINANCIAL** (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☐ Assigned without recourse    ☐ Assigned with limited recourse
By OFF-LEASE ONLY    Title F&I MGR

**EXHIBIT 1**

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      - You do not pay any payment on time;
      - You give false, incomplete, or misleading information on a credit application;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - You break any agreements in this contract.
      The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **OPTIONAL SERVICE CONTRACTS**
   You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

7. **REJECTION OR REVOCATION**
   If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

9. **APPLICABLE LAW**
   Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**Seller's Right to Cancel**
   a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on the front of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.
   b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.
   c. Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.
   d. If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on the front of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.
   e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on the front of this contract) remain in effect even after you no longer have possession of the vehicle.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**EXHIBIT 1**

Attachment C

# LIMITED SPECIAL POWER OF ATTORNEY

Ally Financial Inc. ("Client") hereby grants to AIS Portfolio Services, LLC (formerly known as AIS Portfolio Services, LP, a Limited Partnership) whose principal office is located at 5847 San Felipe, Suite 12000 Houston, TX 77057, together with its affiliates, subsidiaries, directors, officers, and employees, (jointly "AIS") Power of Attorney for the purpose of servicing claims Client or any of its direct or indirect subsidiaries may have in cases being administered pursuant to the Federal Bankruptcy Code that are referred to AIS by Client. Client expressly authorizes AIS, or any of its employees, as attorney-in-fact for the undersigned, and with full power of substitution, to prepare and execute Proofs of Claims in bankruptcy proceedings under the United States Bankruptcy Code on behalf of Client or any of its direct or indirect subsidiaries. This Limited Special Power of Attorney is being given to AIS and may be attached to claims filed on Client's behalf as required by the Federal Rules of Bankruptcy Procedure and the Official Forms.

AIS shall indemnify, defend and hold harmless Client and its successors and assigns from and against any and all losses, costs, expenses (including, without limitation, actual attorney's fees), damages, liabilities, demands or claims of any kind whatsoever ("Claims"), arising out of, related to, or in connection with (i) any action taken by AIS pursuant to this Limited Special Power of Attorney, which act results in a Claim solely by virtue of the unlawful use of this Limited Special Power of Attorney (and not as a result of a Claim related to the underlying instrument with respect to which this Limited Special Power of Attorney has been used), or (ii) any use or misuse of this Limited Special Power of Attorney in any manner or by any person not expressly authorized hereby.

Third parties without actual notice may rely upon the power granted under this Limited Special Power of Attorney upon the exercise of such power of the Attorney in fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Special Power of Attorney has not been revoked.

This Limited Special Power of Attorney, and all authority granted hereunder, shall be in full force and effect until either (i) terminated in writing by Client; or (ii) without further action by Client, automatically upon the termination of the Bankruptcy Services Agreement.

Dated 11/2/2022

By: *[signature]*
Name: Laura A. Fisher
Title: Director, Supply Chain

STATE OF NC
COUNTRY OF Mecklenburg

Subscribed and sworn to (or affirmed) before me on this 2 day of November, 2022 by Laura Afton Fisher proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Khamla Sphabmixay
NOTARY PUBLIC
Mecklenburg County, NC
My Commission Expires July 27, 2025

Signature *[signature]*

**EXHIBIT 1**

**Fill in this information to identify the case:**

Debtor 1: JEFFREY MARC SISKIND

Debtor 2: _____
(Spouse, if filing)

United States Bankruptcy Court for the: CENTRAL District of CALIFORNIA
(State)

Case number: 23-11720-VPZ-13

---

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

---

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Ally Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g))

Where should notices to the creditor be sent?

Ally Bank c/o AIS Portfolio Services, LLC
Name
4515 N. Santa Fe Ave. Dept. APS
Number   Street
Oklahoma City     OK     73118
City     State     ZIP Code

Contact phone (800) 495-1578

Contact email ECFNotices@aisinfo.com

Where should payments to the creditor be sent? (if different)

Payment Processing Center
Name
P.O. Box 78367
Number   Street
Phoenix     AZ     85062
City     State     ZIP Code

Contact phone (800) 495-1578

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**
☐ No
☒ Yes. Claim number on court claims registry (if known)  5   Filed on 06/01/2023
                                                                              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410                                    Proof of Claim                                    page 1

**EXHIBIT 2**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

6. Do you have any number you use to identify the debtor?
   ☐ No
   ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __8__ __1__ __5__ __4__

7. How much is the claim?  $ _5,480.71*_

   *Claimant reserves right to amend its claim, including but not limited to, the right to amend for an unsecured deficiency

   Does this amount include interest or other charges?
   ☐ No
   ☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   Monies Loaned (See Attached)

9. Is all or part of the claim secured?
   ☒ No
   ☐ Yes. The claim is secured by a lien on property.

   Nature of property:
   ☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   Basis for perfection: _____
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property:                              $ _____
   Amount of the claim that is secured:            $ _____

   Amount of the claim that is unsecured:          $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:   $ _____

   Annual Interest Rate (when case was filed)  _____ %
   ☐ Fixed
   ☐ Variable

10. Is this claim based on a lease?
    ☒ No
    ☐ Yes.  Amount necessary to cure any default as of the date of the petition.  $ _____

11. Is this claim subject to a right of setoff?
    ☒ No
    ☐ Yes. Identify the property: _____

**EXHIBIT 2**

Official Form 410                                Proof of Claim                                page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | | Amount entitled to priority |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to property. | ☐ Yes. *Check one:* | | |
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507 (a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C § 507 (a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. §507 (a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507 (a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507 (a)(__) that applies. | | $ _____ |
| | | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

**If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.**

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward that debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     08/16/2023
                     MM / DD / YYYY

/s/ Mouly Purohit
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Mouly Purohit
      First Name      Middle Name      Last Name

Title: Claims Processor

Company: AIS Portfolio Services, LLC
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 4515 N Santa Fe Ave.
         Dept. APS
         Number          Street
         Oklahoma        OK        73118
         City            State     Zip Code

Contact Phone: (888)-455-6662      Email: ECFNotices@aisinfo.com

* This form 410 has been modified by AIS in conformance with FED. R. BANKR. P. 9009 and compliance with FED. R. BANKR. P. 3001. This Form 410, as modified, is substantially similar to Official Form 410.

**EXHIBIT 2**

Official Form 410                Proof of Claim                page 3

**Auto Proof of Claim Attachment**

| | | | |
|---|---|---|---|
| **Name of debtor:** | JEFFREY MARC SISKIND | **Case number:** | 23-11720-VPZ-13 |
| **Name of creditor:** | Ally Bank | **Last four digits of any number you use to identify the debtor's account:** | XXXXX8154 |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

| | | |
|---|---|---|
| 1. **Principal due** | (1) | $4,390.46 |
| 2. **Interest due** | (2) + | $0.00 |
| 3. **Total principal and interest due** | (3) | $4,390.46 |

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

| Description | | Amount |
|---|---|---|
| 1. **Late charges:** | (1) | $97.75 |
| 2. **Non-sufficient funds (NSF) fees:** | (2) | $0.00 |
| 3. **Other. Specify:** Repossession Expenses | (3) | $992.50 |
| 4. **Other. Specify:** | (4) | |
| 5. **Other. Specify:** | (5) | |
| 6. **Total prepetition fees, expenses, and charges.** | (6) | $1,090.25 |

### Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | | None |
| | Number of installment payments due as of petition date *Note: Partial payments will be reflected to the hundredth decimal place.* | (1) | 0.00 |
| 2. **Amount of installment payments due as of petition date:** | | (2) | $0.00 |
| 3. **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | + | $1,090.25 |
| | **Subtract** total of unapplied funds (funds received but not credited to account) | - | $0.00 |
| | **Subtract** amounts for which debtor is entitled to a refund | - | $0.00 |
| | Total amount necessary to cure default as of the petition date | (3) | $1,090.25 |

**EXHIBIT 2**



P.O. Box 380901
Bloomington, MN  55438-0901

August 1, 2019

JEFFREY M SISKIND
3465 SANTA BARBARA DR
WELLINGTON, FL  334147269

## How We Calculated Your Surplus or Deficiency

Subject:  Account Number

Your 2014 MERZ C-CLASS, **VIN** WDDGF8AB2ER312146, was sold on July 24, 2019.  As of the date of this letter, the amount you still owe us under the terms of your contract is $6,991.89.  This amount was calculated as follows:

| | | |
|---|---:|---:|
| Unpaid balance before subtracting money from sale | | $ 18,325.62 |
| This amount was calculated as of August 1, 2019 | | |
| Money from sale | | − 12,100.00 |
|    Unpaid balance minus money from sale | | $ 6,225.62 |
| Known expenses of taking, holding, preparing for sale, processing, and selling vehicle, attorney fees, and other legal expenses: | | |
|   Repossessing & transporting | $ 1,074.95 | |
|   Storage & reconditioning | 31.00 | |
|   Selling costs | 50.00 | |
|   Title & registration fees | 88.50 | |
|   Attorney fees and legal expenses the law permits | 0.00 | |
|   Total expenses | | + 1,244.45 |
| Known credits: | | |
|   Rebate of unearned insurance premiums | $ 478.18 | |
|   Extended service contract refunds | 0.00 | |
|   Insurance and service contract claims | 0.00 | |
|   Total credits | | − 478.18 |
| Deficiency/(surplus) | | $ 6,991.89 |

The amount of any deficiency/surplus shown above may change because of future additional credits, rebates, or charges.  Any deficiency shown above may also change because of additional interest accruing after the date of this letter.

For more information about this transaction or to make payment arrangements, you may call us at the telephone number at the top of this letter or write us at the address at the top of this letter.

Sincerely,
Ally Financial

**EXHIBIT 2**

Attachment C

# LIMITED SPECIAL POWER OF ATTORNEY

Ally Financial Inc. ("Client") hereby grants to AIS Portfolio Services, LLC (formerly known as AIS Portfolio Services, LP, a Limited Partnership) whose principal office is located at 5847 San Felipe, Suite 12000 Houston, TX 77057, together with its affiliates, subsidiaries, directors, officers, and employees, (jointly "AIS") Power of Attorney for the purpose of servicing claims Client or any of its direct or indirect subsidiaries may have in cases being administered pursuant to the Federal Bankruptcy Code that are referred to AIS by Client. Client expressly authorizes AIS, or any of its employees, as attorney-in-fact for the undersigned, and with full power of substitution, to prepare and execute Proofs of Claims in bankruptcy proceedings under the United States Bankruptcy Code on behalf of Client or any of its direct or indirect subsidiaries. This Limited Special Power of Attorney is being given to AIS and may be attached to claims filed on Client's behalf as required by the Federal Rules of Bankruptcy Procedure and the Official Forms.

AIS shall indemnify, defend and hold harmless Client and its successors and assigns from and against any and all losses, costs, expenses (including, without limitation, actual attorney's fees), damages, liabilities, demands or claims of any kind whatsoever ("Claims"), arising out of, related to, or in connection with (i) any action taken by AIS pursuant to this Limited Special Power of Attorney, which act results in a Claim solely by virtue of the unlawful use of this Limited Special Power of Attorney (and not as a result of a Claim related to the underlying instrument with respect to which this Limited Special Power of Attorney has been used), or (ii) any use or misuse of this Limited Special Power of Attorney in any manner or by any person not expressly authorized hereby.

Third parties without actual notice may rely upon the power granted under this Limited Special Power of Attorney upon the exercise of such power of the Attorney in fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Special Power of Attorney has not been revoked.

This Limited Special Power of Attorney, and all authority granted hereunder, shall be in full force and effect until either (i) terminated in writing by Client; or (ii) without further action by Client, automatically upon the termination of the Bankruptcy Services Agreement.

Dated 11/2/2022

By: _[signature]_
Name: Laura A. Fisher
Title: Director, Supply Chain

STATE OF NC
COUNTY OF Mecklenburg

Subscribed and sworn to (or affirmed) before me on this 2 day of November, 2022 by Laura Afton Fisher proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Khamla Sphabmixay
NOTARY PUBLIC
Mecklenburg County, NC
My Commission Expires July 27, 2025

Signature _[signature]_

**EXHIBIT 2**